UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------

HELENE K. TOBIN,

                       Plaintiff,

            v.

IVAN GLUCK and PHYLLIS GLUCK,

                      Defendants.

----------------------------------------------------------------

**MEMORANDUM & ORDER**
07-CV-1605 (MKB)
11-CV-3985 (MKB)

MARGO K. BRODIE, United States District Judge:

       Plaintiff Helene K. Tobin commenced the above-captioned action against Defendants Ivan and Phyllis Gluck on April 18, 2007, pursuant to a guaranty from Defendants to Plaintiff in connection with the lease of a commercial property owned by Plaintiff ("Tobin I"). Plaintiff's Amended Complaint asserts claims of fraud, unjust enrichment and breach of a guaranty, and seeks damages and legal fees. On June 17, 2011, Defendants commenced an action in the Supreme Court of New York, County of Nassau to enforce a stipulation of settlement signed by the parties, resulting from a landlord and tenant proceeding. The County of Nassau action was removed to this Court on August 17, 2011 ("Tobin II"). Defendants moved for summary judgment on Tobin I, (Docket Entry No. 95), and Plaintiff cross-moved to further amend the Amended Complaint filed in Tobin I and to dismiss Tobin II, (Docket Entry No. 102). For the reasons discussed below, the Court grants Defendants' summary judgment motion and dismisses the claims in Tobin I, but grants Plaintiff leave to amend the Amended Complaint in Tobin I to add a claim for breach of contract. The Court denies Plaintiff's motion to dismiss Tobin II. The Court also consolidates the actions for all further proceedings.

## I.   Background

Plaintiff Helene K. Tobin is the owner of 3480 Nostrand Avenue, Brooklyn, New York (the "Property").  (Def. 56.1 ¶ 1; Pl. 56.1 ¶ 1.)  On July 1, 1997, Plaintiff leased the Property to tenant Clean-o-Rama, Inc., for a term of 15 years (the "Lease").  (*See* Lease Assignment, annexed to the Declaration of David C. Segal ("Segal Decl.") as Ex. 4.)  On April 10, 2002, Plaintiff agreed to an assignment of the lease ("Lease Assignment") from Clean-o-Rama, Inc., to Beaaro, Inc. ("Beaaro").  (Def. 56.1 ¶ 2; Pl. 56.1 ¶ 2.)  Defendant Ivan Gluck is President of Beaaro.  (*See* Lease Assignment at 4.)  In connection with the assignment of the lease to Beaaro, Inc., Defendants executed a guaranty, guaranteeing, among other things, the payment of rent (the "Guaranty").  (Def. 56.1 ¶ 3; Pl. 56.1 ¶ 3.)  The Guaranty states in pertinent part:

> Guarantor unconditionally guarantees the due and punctual payment of all installments of Base Rent, Tax Payments or other Additional Rent payable under the Lease through the date upon which the Tenant under the Lease and all subtenants and other occupants of the Demised Premises vacate, and give possession to Landlord of the Demised Premises.

(Def. 56.1 ¶ 4; Pl. 56.1 ¶ 4.)  The Guaranty provides that it is to be interpreted under the laws of New York.  (Def. 56.1 ¶ 5; Pl. 56.1 ¶ 5.)

Plaintiff commenced a holdover proceeding in New York Landlord/Tenant Court, Index No. L&T 06K070405 (the "L&T Action") alleging a default under the Lease.  (Def. 56.1 ¶ 7; Pl. 56.1 ¶ 7.)[1]  The action was commenced against then tenant Beaaro, Inc., and several undertenants identified as John Does #1–5 and UVW and XYZ Corps (collectively "tenants").  (*See* L&T Decision, annexed to Segal Decl. as Ex. 7.)  Defendants were not named as parties in the L&T Action.  In settlement of the L&T Action, on or about July 3, 2007, Plaintiff,

---

[1]   Neither party clearly states when this action was commenced.  It commenced sometime after April 2006 (when Beaaro first stopped paying rent) and terminated upon the signing of a stipulation dated July 3, 2007.

Defendants, the tenants, and two other individuals associated with the tenants, all represented by counsel, entered into a stipulation "to resolve and settle their disputes amicably." (Def. 56.1 ¶ 8; Pl. 56.1 ¶ 8; Stipulation and Order (the "Stipulation") dated July 3, 2007, annexed to Segal Decl. as Ex. 5.) The Stipulation was "So Ordered" by Judge Loren Baily Schiffman on July 19, 2007. (Stipulation.) Paragraph 5 of the Stipulation states in pertinent part:

> Not later than August 2, 2007 all respondents, and each of their principals, agents, officers, employees, shareholders and all persons claiming under them shall surrender possession of the captioned premises to the petitioner, empty, broom clean, in good order, condition and repair, except for ordinary wear and tear. Respondent shall deliver the keys to the undersigned attorney for the Tobins, which shall constitute surrender of the premises, but not acceptance of the surrender, unless and until the landlord, his agents or assignees inspect the premises for compliance with the terms of this paragraph, and determine that there has been full, due and timely compliance.

(*Id.* ¶ 5.) Paragraph 6 of the Stipulation states:

> Not later than August 2, 2007 Beaaro shall pay to the petitioner, by certified funds or cashier's check, the sum of $250,000 in full satisfaction of petitioner's claims against respondents under the lease and guaranty.

(*Id.* ¶ 6; Def. 56.1 ¶ 9; Pl. 56.1 ¶ 9.) Paragraph 8 of the Stipulation provides for an alternative remedy in the event of noncompliance with paragraph 6, it states in pertinent part:

> [F]or Beaaro's failure to timely and fully comply with paragraph 6, judgment in the amount of $350,000, together with all reasonable attorneys' fees and costs incurred by petitioner to obtain and enforce such judgment less any payments made against the obligations of paragraph 6 by respondents.

(Stipulation ¶ 8(b).) Beaaro paid $250,000 to Plaintiff on August 2, 2007. (Def. 56.1 ¶ 10; Pl. 56.1 ¶ 10.) According to Defendants, the keys to the Property were delivered to the attorney for Plaintiff on August 2, 2007 and the Property was vacant at that time. (Def. 56.1 ¶¶ 12, 14.) According to Plaintiff, one key to the Property was timely delivered but Plaintiff has no

knowledge as to whether Defendants or the tenants of the Property have additional keys.[2]  (Pl. 56.1 ¶ 12.)  On June 3, 2008, Defendants and the tenants moved in Civil Court, Kings County, to enforce the terms of the Stipulation.  (Def. 56.1 ¶ 16; Pl. 56.1 ¶ 16.)  Defendants and the tenants moved to (1) obtain the return of $17,421.02 in security deposit from Plaintiff, (2) execute and tender stipulations of discontinuance for two separate actions then-proceeding between the parties in Kings County Supreme Court, (3) execute and tender a stipulation of discontinuance in Tobin I which was pending in this Court, (4) tender general releases in the form attached to the Stipulation, (5) obtain attorneys' fees in accordance with the Stipulation, and (6) such other relief as the Civil Court deemed proper.  (L&T Decision at 1–2.)  By decision dated January 23, 2009, the court granted the motion in its entirety.  (*Id.*; Def. 56.1 ¶ 17; Pl. 56.1 ¶ 9.)  The L&T decision stated, "[u]pon reviewing said Stipulation, it is clear that respondent was in compliance with its terms and requirements."  (L&T Decision at 3.)  Defendants assert that the L&T Decision referred to the compliance of Defendants and the tenants.  (Def. 56.1 ¶ 17.)  Plaintiff contends that the L&T Decision only referred to the tenants and does not imply that Defendants were in compliance with the terms of the Stipulation.  (Pl. 56.1 ¶ 17.)

By decision dated March 17, 2011, the Appellate Term reversed the L&T Decision on the grounds that the civil court lacked jurisdiction to grant the entirety of the relief requested. (Decision of the Appellate Term ("App. Term Decision"), dated March 17, 2011, annexed to Segal Decl. as Ex. 8; Def. 56.1 ¶ 18; Pl. 56.1 ¶ 18.)

---

[2]  Plaintiff seems to argue that the Property was not vacant.  (Pl. 56.1 ¶ 14.)  However, this statement directly contradicts other submissions Plaintiff has made to this Court.  (*See* Am. Compl. ¶ 21 ("Upon surrender of the Property Tobin performed certain tests and inspections, including those required or permitted by the Stipulation."); Affidavit of Gerald J. Tobin ("Tobin Aff.") ¶ 10, dated July 24, 2008, annexed to Tobin Decl. as Ex. A ("The respondents surrendered the premises on the last day permitted by the Stipulation.").)

## II. Procedural History

The parties have generated a prodigious litigation history in what is essentially a landlord-tenant dispute. The Court attempts to summarize the major procedural events.

Plaintiff commenced an eviction action in the landlord-tenant division of the Civil Court of the City of New York, Kings County, alleging a default under the Lease. (Def. 56.1 ¶ 7; Pl. 56.1 ¶ 7.) At some point two other actions relating to these parties and the Lease and Guaranty were commenced in the Supreme Court of New York, Kings County (the "Kings County Actions"). (*See* L&T Decision at 2.) On July 3, 2007, in settlement of the L&T Action and Plaintiff's claims against Defendants, Plaintiff, Defendants and the tenants entered into the Stipulation. (Def. 56.1 ¶ 8; Pl. 56.1 ¶ 8.) On April 18, 2007, Plaintiff commenced the instant action, Tobin I, in this Court. (Docket Entry No. 1.) Plaintiff asserted claims of unjust enrichment and breach of the Guaranty. (*Id.*) Plaintiff amended the Complaint on November 7, 2008, bringing claims of fraud, unjust enrichment and breach of the Guaranty. (Docket Entry No. 25.)

On June 3, 2008, Defendants and the tenants moved for enforcement of the terms of the Stipulation in the Civil Court of New York City, Kings County. (Def. 56.1 ¶ 16; Pl. 56.1 ¶ 16.) The court granted that motion on January 23, 2009. (Def. 56.1 ¶ 17; Pl. 56.1 ¶ 9.) On March 17, 2011, the Appellate Term reversed and vacated the L&T Decision on the grounds that the civil court lacked jurisdiction to grant the entirety of the relief requested. (Def. 56.1 ¶ 18; Pl. 56.1 ¶ 18.)

On June 17, 2011, Defendants commenced an action in the Supreme Court of New York, Nassau County. (Nassau Action Complaint, annexed to the declaration of John Harris ("Harris Decl.") as Ex. C.) Defendants sought specific performance of the Stipulation, attorneys' fees relating to the enforcement of the Stipulation and defense of the instant action before this Court,

and return of their deposit in the sum of $17,421.02 plus interest.  (*Id.*)  Plaintiff removed the Nassau action to this Court on August 17, 2011 bearing the case number 11-CV-3985, Tobin II. At some point, the Kings County Actions were terminated.  (*See id.* ¶ 3.)  The Court has no specific information about the termination of these actions.  On June 25, 2013, Plaintiff filed another action in this district ("Tobin III"), No. 13-CV-3592, against Defendants for fraud and breach of the Stipulation.

## III.  Tobin I

In Tobin I, Defendants move for summary judgment and Plaintiff cross-move to amend the Amended Complaint.

### a.  Standard of Review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Bronzini v. Classic Sec., L.L.C.*, --- F. App'x ---, ---, 2014 WL 943933, at *1 (2d Cir. Mar. 12, 2014); *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013); *Kwong v. Bloomberg*, 723 F.3d 160, 164–65, 2013 WL 3388446, at *4 (2d Cir. 2013); *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012).  The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.  The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.*  The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor

of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b. Guaranty cause of action

Defendants move for summary judgment on the basis that their payment of $250,000 to Plaintiff released them from all liability under the Guaranty pursuant to paragraph 6 of the Stipulation and Plaintiff therefore cannot sustain her breach of Guaranty claim against Defendants. Plaintiff asserts that paragraph 6 released Defendants from liability as to only those claims then before the civil court in which the Stipulation was entered. The parties propose competing interpretations of paragraph 6 of the Stipulation that each believes comport with the clear and unambiguous language of that paragraph and the Stipulation as a whole.

"When interpreting a contract [under New York law], the 'intention of the parties should control, and the best evidence of intent is the contract itself.'" *Gary Friedrich Enterprises, LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 313 (2d Cir. 2013); *see also Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir. 1985) ("As a general matter, the objective of contract interpretation is to give effect to the expressed intentions of the parties."). "At the outset, the court must determine whether the language the parties have chosen is ambiguous . . . ." *Id.* (quoting *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011)); *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002) ("The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." (citation omitted)). "If the contract is unambiguous, its meaning is . . . a question of law for the court to decide." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009). "In interpreting an unambiguous contract, the court is to consider its [p]articular words not in isolation but in the light of the obligation as a whole and the intention of the parties as

manifested thereby . . . but the court is not to consider any extrinsic evidence as to the parties' intentions." *Id.* (citations and internal quotation marks omitted); *see also In re AMR Corp.*, 730 F.3d 88, 98 (2d Cir. 2013) ("[C]ourts applying New York law construe a contract 'so as to give full meaning and effect to all of its provisions.'" (quoting *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996))).

If the contract is ambiguous, "extrinsic evidence as to the parties' intent may properly be considered." *JA Apparel*, 568 F.3d at 397. "Where there is such extrinsic evidence, the meaning of the ambiguous contract is a question of fact for the factfinder." *Id.* "Ambiguity here is defined in terms of whether a reasonably intelligent person viewing the contract objectively could interpret the language in more than one way." *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 69 (2d Cir. 2008). "To the extent the moving party's case hinges on ambiguous contract language, summary judgment may be granted only if the ambiguities may be resolved through extrinsic evidence that is itself capable of only one interpretation, or where there is no extrinsic evidence that would support a resolution of these ambiguities in favor of the nonmoving party's case." *Id.*; *see also Rothenberg*, 755 F.2d at 1019 ("[W]here contractual language is susceptible of at least two fairly reasonable interpretations, this presents a triable issue of fact, and summary judgment [is] improper." (second alteration in original) (internal quotation marks omitted)); *Leon v. Lukash*, 504 N.Y.S.2d 455, 455 (App. Div. 1986) (noting that an ambiguous contract "presents a question of fact which may not be resolved by the court on a motion for summary judgment").

### i. Paragraph 6 of the Stipulation in isolation

Defendants argue that paragraph 6 of the Stipulation acts as a release for all present *and future* claims. Plaintiffs respond that paragraph 6 only referred to those

claims brought under the L&T Action. Paragraph 6 of the Stipulation states in pertinent part:

> Not later than August 2, 2007 Beaaro shall pay to the petitioner, by certified funds or cashier's check, the sum of $250,000 in full satisfaction of petitioner's claims against respondents under the lease and guaranty.

(Stipulation ¶ 6.) The Court is not persuaded by either party's reading of paragraph 6 in isolation. Defendants' proffered interpretation of this provision is reasonable. After payment of $250,000, pursuant to paragraph 6, all claims, including those resulting from the Stipulation, were to be considered fully satisfied. Equally reasonable is Plaintiff's proposed interpretation that limits the scope of paragraph 6 to those claims then before the civil court. (Pl. Opp'n Mem. 9.) However, reading paragraph 6 in light of the entire Stipulation, as the Court must, the Court agrees with Plaintiff and finds that paragraph 6 limited its release to those claims then before the civil court. *See NES Fin. Corp. v. JPMorgan Chase Bank, N.A.*, --- F. App'x ---, ---, 2014 WL 642673, at *2 (2d Cir. Feb. 20, 2014) ("Where the parties dispute the meaning of particular contract clauses, the task of the court is to determine whether such clauses are ambiguous when read in the context of the entire agreement." (quoting *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010))).

## ii. The Stipulation as a whole

Although the scope of "claims" within paragraph 6 may be ambiguous, Defendants' interpretation does not give full effect to every part of the Stipulation. *See Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 236 (2d Cir. 2008) ("A contract should be construed so as to give full meaning and effect to all of its provisions." (internal quotation marks omitted) (quoting *Am. Express Bank Ltd. v. Uniroyal, Inc.*, 562 N.Y.S.2d 613, 614 (App. Div. 1990))); *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (recognizing

that a contract "should be construed so as to give full meaning and effect to all of its provisions"); *Corhill Corp. v. S. D. Plants, Inc.*, 9 N.Y.2d 595, 599 (1961) ("It is a cardinal rule of construction that a court should not adopt an interpretation which will operate to leave a provision of a contract without force and effect." (citation and internal quotation marks omitted)); *Rentways, Inc. v. O'Neill Milk & Cream Co.*, 308 N.Y. 342, 347 (1955) ("That interpretation is favored which will make every part of a contract effective." (citation and internal quotation marks omitted)).

Paragraph 15 of the Stipulation also expressly conditions the termination of the Lease and Guaranty upon full and timely compliance with all the terms, conditions and provisions. Paragraph 15 states:

> Upon full and timely compliance with all the terms, conditions and provisions hereof, the lease between Beaaro and petitioner and the guarantee executed by Ivan Gluck and Phyllis Gluck in favor of petitioner shall be deemed terminated, to the extent not previously terminated, cancelled or otherwise voided.

(Stipulation ¶ 15.) Defendants argue that paragraph 15 is a "catch-all" provision that operates independently of paragraph 6. According to Defendants, paragraph 15 does not mandate compliance with all the terms of the Stipulation before the Lease or Guaranty (and their accompanying obligations) terminate, because paragraph 15 expressly recognizes other methods of termination. (*See id.* ¶ (". . . to the extent not previously terminated, cancelled or otherwise voided").) As an example, Defendants propose that if $250,000 were not timely paid, as required by paragraph 6, but $350,000 were eventually paid, as provided for by paragraph 8(b), the Lease and Guaranty would still terminate pursuant to the catch-all provision in paragraph 15. (Defs. Reply Mem. 7.) However, paragraph 8(b) undermines Defendants' fragile interpretation. Paragraph 8(b) states that the payment of $350,000 pursuant to an "entry of a judgment under

New York Civil Practice Law and Rules ("CPLR") 3215(i) and/or the enforcement of any such judgment shall not be considered compliance with paragraphs 3 or 6 hereof." Accordingly, satisfaction of paragraph 8(b) would not constitute "full and timely compliance" of paragraph 6 within the meaning of paragraph 15; without full and timely compliance the Lease and Guaranty would not terminate under the Stipulation notwithstanding the hypothetical payment of $350,000. Defendants' interpretation renders paragraph 8(b)'s language superfluous and such a result should be avoided. *See Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 99 (2d Cir. 2012) ("Any interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible." (citation and internal quotation marks omitted)); *Maverick Tube Corp.*, 595 F.3d at 468 (cautioning courts "to safeguard against adopting an interpretation that would render any individual provision superfluous" (citation and internal quotation marks omitted)). Moreover, Paragraph 13 of the Stipulation requires "full and timely compliance with all of the terms, conditions and provisions hereof" before the parties were to jointly inform the Appellate Term that their dispute had been resolved. (Stipulation ¶ 13.)

In support of their argument that payment of $250,000 released Defendants from all then current and future obligations under the Guaranty, Defendants argue that each provision of the Stipulation which imposes an obligation also provides a distinct remedy. For example, paragraph 8(b) of the Stipulation states in pertinent part that in the event of "Bearro's failure to timely and fully comply with paragraph 6," Plaintiff may immediately obtain a judgment pursuant to CPLR § 3215(i) in the amount of $350,000. (*Id.* ¶ 8(b).) While paragraph 8(b) does provide for an alternative remedy in the event of default under paragraph 6, the existence of this alternative remedy does not support Defendants' expansive reading of paragraph 6 to include all

present and potential future claims arising under the Guaranty, in spite of the continued legal effect of the Guaranty and the underlying Lease. As just discussed, 8(b)'s alternative remedy would not be considered timely under paragraph 6 and would therefore not satisfy paragraph 15; consequently, any claims under the Guaranty, and any future claims arising from the continued validity of the Guaranty, would not be foreclosed. In addition, contrary to Defendants' argument that every provision provides a distinct remedy, paragraph 4 of the Stipulation required Beaaro to maintain insurance on the Property up to and including August 2, 2007, but does not provide a remedy for Beaaro's failure to maintain such insurance. (*Id.* ¶ 4.)

The Court agrees with Plaintiff that the Stipulation, when read as a whole, is unambiguous.[3] The parties agreed to the entry of a judgment of possession and warrant of

---

[3] Because the Court finds the Stipulation unambiguous, it does not address Defendants' argument concerning commercial reasonableness which requires recognition of extrinsic evidence. *See JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009) (noting that courts should not look to extrinsic evidence when interpreting an unambiguous contract); *Int'l Klafter Co., Inc. v. Cont'l Cas. Co., Inc.*, 869 F.2d 96, 100 (2d Cir. 1989) ("It is a fundamental principle of contract interpretation that, in the absence of ambiguity, the intent of the parties must be determined from their final writing and no parole evidence or extrinsic evidence is admissible."). Defendants also argue that Plaintiff's interpretation is commercially unreasonable, a result this Court should avoid. *See Elsky v. Hearst Corp.*, 648 N.Y.S.2d 592, 593 (App. Div. 1996) (rejecting an interpretation of a non-disclosure provision that would result in a "commercially unreasonable restriction"). Defendants claim that the parties settled the rent claim pursuant to the Stipulation for $250,000. Plaintiff alleges that this $250,000 settlement amount was paid to settle past due rent, which Defendants claim totaled $143,000. Defendants argue that no obligor (or reasonable person) would settle a $143,000 claim for $250,000. According to Defendants, the only plausible explanation for the $250,000 payment was that it was in settlement of *all* claims, then-present and future, that might arise under the Lease and Guaranty. (Def. Reply Mem. 5–6.) Plaintiff stated in a letter to the court seeking permission to file a sur-reply, that in addition to the base rent, Defendants owed more in "additional rent." (Pl. Ltr. dated July 5, 2013, Docket Entry No. 107.) The parties' submissions purporting to explain the difference between the rent owed and the settlement amount are all extrinsic evidence that the Court is free to disregard if it finds the contract unambiguous.

The Court notes that the L&T Action was a holdover proceeding, not a non-payment proceeding and recognizes that the settlement amount could include recovery for more than rent then owed. *See Park Summit Realty Corp. v. Frank*, 434 N.Y.S.2d 73, 75 (App. Term 1980)

eviction with the execution of the warrant stayed in paragraph 1 of the Stipulation. In

paragraph 3, the tenants agreed to make certain rent-related payments, and in paragraph 5,

agreed to vacate the property no later than August 2, 2007. Tenants also agreed to pay $250,000

in full satisfaction of Plaintiff's claims under the Lease and Guaranty in paragraph 6 and in

paragraph 8 the parties provided that if Defendants and tenants failed to comply with paragraphs

3 and 6, Plaintiff could, among other things, immediately enter judgment in the amount of

$350,000 and execute the warrant of eviction. Paragraph 15, the last paragraph of the

Stipulation, provides for the termination of the Lease and Guaranty upon full and timely

compliance with all of the terms, conditions and provisions thereof. Because paragraph 15

requires full and timely compliance with the entire Stipulation before the Lease and Guaranty

terminate, despite payment of $250,000 pursuant to paragraph 6, Defendants can still be held

liable for their obligations under the Guaranty for any claims that were not part of Plaintiff's

claims in the L&T Action. As such, Defendants' payment of $250,000 does not prevent

Plaintiff's cause of action for breach of the Guaranty.[4] However, this claim assumes the viability

(discussing the different substantive rights associated with each summary proceeding), *aff'd*, 56 N.Y.2d 1025 (1982); *see also Towne Partners, LLC v. RJZM, LLC*, 912 N.Y.S.2d 210, 211 (App. Div. 2010) (recognizing a holdover proceeding settlement which required payment of more than just rent then due). In addition, the Court also notes that though the parties agreed in paragraph 6 of the Stipulation to a payment of $250,000, in paragraph 8(b) the parties agreed to an additional $100,000 without any explanation, in the event the $250,000 was not timely made. Thus, the Defendants' argument that they would not have agreed to settle the holdover proceeding for $250,000 when they only owed $143,000 in rent is simply unpersuasive.

[4] Defendants also argue that the L&T Decision which stated that "respondent was in compliance with" the "terms and requirements" of the Stipulation was a factual finding that this Court should recognize as an indication that the Defendants did in fact comply with the Stipulation. However, that decision was reversed on appeal because the lower court lacked subject matter jurisdiction. Therefore, any factual findings made by the civil court operating without proper jurisdiction should not be relied upon by either party. *See Zeneca Ltd. v. Novopharm Ltd.*, 919 F. Supp. 193, 196 (D. Md. 1996) ("As a general rule, a vacated judgment

of the Guaranty, and because, as discussed below, the Guaranty has expired, this cause of action is nevertheless dismissed.

### iii. Defendants were not released as suretors

Defendants also argue that they were released from liability indirectly as a result of the Beaaro's release under the Stipulation. (Def. Mem. 14–15.) Defendants cite to *Jones v. Gelles* for the proposition that the release of a principal releases a surety. 509 N.Y.S.2d 900, 902 (App. Div. 1986) ("A creditor's release of the principal on a promissory note generally acts to discharge the guarantor as a matter of law . . . .").

Here, unlike in *Jones*, the Stipulation did not release anyone, not even the tenant, Beaaro, because the Stipulation contemplated the issuance of general releases to Plaintiff, Defendants, Beaaro and others "upon due and timely compliance with the terms of this stipulation and order by the respective release(s)." (Stipulation ¶ 9.) These releases were never effectuated. Indeed, it was Defendants' desire to obtain the final execution of these releases that motivated Defendant to move in civil court to seek the enforcement of the Stipulation. Defendants' argument that they were released as principals and as guarantors under the Stipulation is without merit.

---

and the factual findings underlying it have no preclusive effect; the judgment is a legal nullity."); *cf. United States v. Romero*, No. 97-CR-650, 1998 WL 788799, at *4 n.3 (S.D.N.Y. Nov. 10, 1998) (declining to follow the reasoning of a vacated decision); *but see Gutter v. E.I. DuPont de Nemours & Co.*, No. 95-CV-2152, 2001 WL 36086589, at *6 (S.D. Fla. Mar. 27, 2001) ("Despite the fact that the vacated decision itself may be a nullity in terms of preclusive effect and may not be relied on for precedent, a logical and well-reasoned decision, despite vacatur, is always persuasive authority, regardless of its district of origin or its ability to bind." (citations omitted)). Plaintiff, in turn, argues that the Appellate Term not only reversed the L&T Decision, but also adjudicated the case on its merits and denied Defendants' motion. This argument is equally unreasonable as discussed *infra* Part IV.b.i.

### c. **Plaintiff fails to state a claim based on the Guaranty**

Defendants argue that, even assuming that paragraph 6 of the Stipulation did not release them from all future claims, any obligation under the Guaranty terminated when the tenant vacated the Property and gave possession to Plaintiff.  Under the Guaranty, Defendants' obligations extend "through the date upon which the Tenant under the Lease and all subtenants and other occupants of the Demised Premises vacate, and give possession to Landlord of the Demised Premises."  (Def. 56.1 ¶ 4; Pl. 56.1 ¶ 4; Guaranty ¶ 1.)

Plaintiff, in her own submissions, concedes that surrender took place.  (Am. Compl. ¶ 21 ("Upon surrender of the Property Tobin performed certain tests and inspections, including those required or permitted by the Stipulation."); Affidavit of Gerald J. Tobin ("Tobin Aff.") ¶ 10, dated July 24, 2008, annexed to Tobin Decl. as Ex. A ("The respondents surrendered the premises on the last day permitted by the Stipulation.").)   Because it is undisputed that the Property was surrendered, the Guaranty terminated by its own terms.  Any of Plaintiff's claims against Defendants that rely on the Guaranty, including Plaintiff's claim for past due rent and other expenses under the Lease, terminated upon surrender of the Property.

Plaintiff states that "Bearro failed to pay rent due under the Lease after the date of the Stipulation and has failed to pay the additional rent required to perform . . . repairs and remediation."  (Am. Compl. ¶ 42.)  The claim against Defendants, pursuant to their obligations under the Guaranty, is based entirely on rent accumulated *after* the tenant Bearro vacated the Property and gave possession of the Property to Plaintiff.  However, Defendants' liability under the Guaranty terminated upon vacating the Property and giving possession to Plaintiff.  Plaintiff argues that pursuant to the express terms of the Stipulation, Plaintiff's *acceptance* of surrender, not just surrender, was required before liability ceased.  However, as Plaintiff seems to concede,

this argument is appropriately rooted in Defendants' obligations under, and alleged breach of, the Stipulation rather than the Guaranty. (*See* Pl. Reply Mem. 7 ("The Guaranty has not 'expired' but even if it did, these Defendants are still liable as parties to the contract which is the Stipulation . . . ." (emphasis omitted)).) Plaintiff's breach of Guaranty claim is therefore dismissed.[5]

---

[5] Paragraph 5 of the Stipulation states that "[r]espondent shall deliver the keys to the undersigned attorney for the Tobins, which shall constitute surrender of the premises, but not acceptance of surrender, unless and until the landlord, his agents or assignees inspect the premises for compliance with the terms of this paragraph and determine that there has been full, due and timely compliance." (Stipulation ¶ 5.) The parties offer two distinct interpretations of paragraph 5 of the Stipulation. Defendants argue that surrender occurred when they gave Plaintiff's attorney the key to the Property. (Def. Mem. 8–9.) Plaintiff, on the other hand, argues that effective surrender requires the acceptance of that surrender, pursuant to the other terms and conditions of paragraph 5. (Pl. Opp'n Mem. 7– 8.) Specifically, under paragraph 5, surrender is not accepted until Plaintiff verified that the Property was left "empty, broom clean, in good order, condition and repair, except for ordinary wear and tear." (Stipulation ¶ 5.) Plaintiff argues that these other terms were not followed by Defendants. (*See* Tobin Aff. ¶ 11 (discussing structural and non-structural problems discovered by a firm of professional engineers)). Plaintiff then concludes that because surrender was defective under the Stipulation, the Guaranty never expired. Defendants argue that Paragraph 5 speaks of "two legally distinct events: (a) surrender of the premises, and (b) the landlord's inspection and acceptance of surrender. Acceptance of surrender is specifically tied to the return of the security deposit. Nothing in the Stipulation states or implies that Plaintiff need accept surrender for the Guaranty to terminate." (Defs. Reply Mem. 8–9.) The Court agrees with Defendants' interpretation. The Guaranty requires only a *surrender* of the Property, not an *acceptance* of surrender or an inspection, to end Defendants' obligations. (Guaranty ¶ 1 ("Guarantor unconditionally guarantees the due and punctual payment of all installments of Base Rent, Tax Payments or other Additional Rent payable under the Lease through the date upon which the Tenant under the Lease and all subtenants and other occupants of the Demised Premises vacate, and give possession to Landlord of the Demised Premises"), annexed to Segal Decl. as Ex. 3.) In addition, paragraph 15 of the Stipulation does contemplate that the Guaranty could terminate on its own terms. (*See* Stipulation ¶ 15 ("Upon full and timely compliance with all the terms, . . . the gurantee . . . shall be deemed terminated, *to the extent not previously terminated*, cancelled or otherwise voided." (emphasis added)).) Thus, any alleged breach of the Stipulation does not affect the proper termination of the Guaranty on its own terms.

### d.  Fraudulent misrepresentation claim

Plaintiff argues that Defendants made false representations within the Stipulation, knowing them to be false at the time.  (Am. Compl. ¶ 28.)  Defendants argue that Plaintiff's fraud claim must be dismissed as such a cause of action does not lie where the alleged fraud relates to an alleged breach of contract.  (Def. Mem. 9–11.)

Intentionally false statements indicating an intent to perform under a contract generally do not support an independent claim for fraud under New York Law.  *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) ("intentionally-false statements . . . indicating . . . intent to perform under [a] contract . . . [are] not sufficient to support a claim of fraud under New York law"); *see also GS Equities, Ltd. v. Blair Ryan Co.*, No. 08-CV-1581, 2011 WL 3278909, at *6 (S.D.N.Y. July 26, 2011) ("Under New York law, allegations that contractual warranties and representations were fraudulent do not magically transform a contract dispute into a fraud action."); *cf. EQT Infrastructure Ltd. v. Smith*, 861 F. Supp. 2d 220, 233 (S.D.N.Y. 2012) ("It is black letter law in New York that a claim for common law fraud will not lie if the claim is duplicative of a claim for breach of contract.").  The Second Circuit, in interpreting New York law, has held that to maintain a claim for fraud based on intentionally false statements under a contract, "a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract . . . or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract . . . or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages . . . ." *Bridgestone/Firestone*, 98 F.3d at 20 (citations and internal quotation marks omitted); *see also Reddy v. Mangino*, No. 08-CV-4805, 2010 WL 2771836, at *2 (E.D.N.Y. July 13, 2010);

*Cougar Audio, Inc. v. Reich*, No. 99-CV-4498, 2000 WL 420546, at *6 n.4 (S.D.N.Y. Apr. 18, 2000) (quoting *Bridgestone/Firestone*, 98 F.3d at 20).

Plaintiff is correct, however, that on at least four occasions, most recently in 1995, the New York Court of Appeals has held that a promise made within a contract with the unexpressed intent not to perform the promise constitutes fraud. *See Graubard, Mallen, Dennet & Horowitz v. Moskovits*, 629 N.Y.2d 1009 (1995); *Deerfield Communications Corp. v. Chesebrough-Ponds*, 68 N.Y.2d 954 (1986); *Channel Master Corp.* v. *Aluminum Limited Sales, Inc.*, 4 N.Y.2d 403 (1958); *Sabo* v. *Delman*, 3 N.Y.2d 155 (1957). But, "there are numerous Appellate Division cases that state precisely the opposite rule." *LCO Destiny, LLC v. Michaels Stores, Inc.*, 543 F. Supp. 2d 129, 132 n.2 (N.D.N.Y. 2008) (quoting *Cougar Audio, Inc.*, 2000 WL 420546, at *6 n.4); *see also Papa's-June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1161 (S.D.N.Y. 1996) (collecting cases). The difference has been explained by the fact that there are fact-specific exceptions to the general principle and that the New York Court of Appeals has recognized four factual circumstances where the exception applies. *See Cougar Audio, Inc.*, 2000 WL 420546, at *6 n.4. ("The Second Circuit's rule which, of course, we follow here seems to be based on the view that the Appellate Division cases state the general principle of law, and that each of the individual Court of Appeals decisions to the contrary should be read as a fact-specific exception to that principle." (citing *Bridgestone/Firestone*, 98 F.3d at 19–20)).

Here, Plaintiff argues that the Defendants, "as parties to the Stipulation, promised to do things which they did not intend to do and which, in fact, they could not do." (Pl. Opp'n Mem. 3–4.) Plaintiff has not alleged that any of the recognized exceptions to the general prohibition of fraud claims based on a contract promise expressing intent to perform apply here. Therefore, Plaintiff's claim fails. *See Rabin v. Mony Life Ins. Co.*, 387 F. App'x 36, 40 (2d Cir.

2010) ("Because the complaint does not allege that MONY made any false representations collateral to the contract . . . '[t]he alleged false representations are the essential terms of the . . . contract[] [and] . . . failure by [MONY] to honor these terms gives rise to an action for breach of contract, not one in tort.'" (all alterations but first in original) (quoting *Wegman v. Dairylea Coop., Inc.*, 376 N.Y.S.2d 728, 734 (App. Div. 1975))); *see also Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001); *M.E.S., Inc. v. Liberty Mut. Sur. Grp.*, No. 10-CV-02798, 2014 WL 46622, at *13–14 (E.D.N.Y. Jan. 6, 2014) (recognizing that an "alleged inducement could [not] pull double duty as an enforceable contract term" and "fraud-in-the-inducement claim"); *Aero Media LLC v. World Healing Ctr. Church, Inc.*, No. 12-CV-5196, 2013 WL 2896856, at *4 (S.D.N.Y. June 11, 2013) ("A fraud claim that alleges material misrepresentations about a matter collateral to the contract (as opposed to misrepresentations about essential terms of the contract, or the intent to perform), . . . is not comprehended within a related breach of contract claim and may be pled separately."); *EQT Infrastructure Ltd.*, 861 F. Supp. at 234 ("When a plaintiff's fraud claim 'arises out of the same facts as [the] breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties,' the fraud claim is duplicative and cannot stand." (alteration in original) (quoting *Telecom Int'l Am*, 280 F.3d at 196)); *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 198–99 (S.D.N.Y. 2011) ("The claim thus merely recasts [defendant]'s alleged violations of these contractual provisions as fraudulent acts and misrepresentations. Consequently, . . . 'failure by [defendant] to honor these terms gives rise to an action for breach of contract, not one in tort.'" (quoting *Rabin*, 387 F. App'x. at 40)); *Marcantonio v. Picozzi*, 893 N.Y.S.2d 623 (App. Div. 2010) (stating that in order to recover damages for fraud, the fraud alleged cannot relate to a

breach of contract unless the plaintiff can allege a legal duty independent of the contract itself).

Moreover, in discussing her fraud claim, Plaintiff specifically states that it relates to alleged

breaches of the Stipulation. (*See* Pl. Opp'n Mem. 5 ("Paragraph 21 of the complaint describes

some of the events which were discovered by the [P]laintiff after the Stipulation was executed,

which constituted breach of the Stipulation.").) Because the alleged fraudulent representation

here is nothing more than a claim that Defendants failed to perform as required under the

Stipulation, Plaintiff's cause of action based on fraud cannot be maintained and is dismissed.[6]

### e. Unjust enrichment

Plaintiff argues that Defendants, as principals and owners of Beaaro, benefitted from

Beaaro's failure to pay its obligations under the Lease and therefore have been unjustly enriched.

(Am. Compl. ¶¶ 34, 37.) Defendants argue that because the Lease, Guaranty and Stipulation

govern the parties' rights and obligations, Plaintiff has no recourse in quasi-contract or unjust

enrichment. (Defs. Mem. 12–13.)

"Unjust enrichment is a quasi-contractual claim; it exists only in the absence of a valid

contract." *Oorah, Inc. v. Schick*, --- Fed. App'x ---, ---, 2014 WL 128529, at *2 (2d Cir. Jan. 15,

2014); *see also Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*,

448 F.3d 573, 586–87) ("The theory of unjust enrichment lies as a quasi-contract claim. It is an

obligation the law creates *in the absence of any agreement* . . . . The existence of a valid and

enforceable written contract governing a particular subject matter ordinarily precludes recovery

in quasi contract for events arising out of the same subject matter." (citations and internal

---

[6] Plaintiff also argues that its fraud claim should not be dismissed because "nothing in [D]efendants' statement of allegedly undisputed facts addresses any of the elements of fraud alleged in the Complaint . . . ." (Pl Opp'n Mem. 2–3.) Although true, the fact that Defendants did not dispute Plaintiff's fraud allegations is irrelevant since Plaintiff cannot show that her fraud claim can exist independently of a breach of contract claim.

quotation marks omitted)); *United States v. Manoussos*, No. 10-CV-179, 2012 WL 899565, at *5 (E.D.N.Y. Mar. 16, 2012) ("The notion of unjust enrichment applies where there is no contract between the parties." (quoting *Maryland Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 212 (2d Cir. 2000))); *Barth Packaging, Inc. v. Excelsior Packaging Grp., Inc.*, No. 11-CV-2563, 2011 WL 3628858, at *2 (S.D.N.Y. Aug. 16, 2011) ("[T]he unjust enrichment claim must rest on a lack of an express agreement between the parties. The presence of an express contract is fatal to recovery on a quasi-contract theory."); *Watts v. Jackson Hewitt Tax Serv. Inc.*, 579 F. Supp. 2d 334, 354 (E.D.N.Y. 2008) ("In New York, 'a claim alleging unjust enrichment may not be maintained where there is a valid and express agreement between the parties, which explicitly covers the same specific subject matter for which the implied agreement is sought.'" (quoting *MT Property, Inc. v. Weinstein*, 855 N.Y.S.2d 627, 627 (App. Div. 2008))); *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012) ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." (citations omitted)), *reargument denied*, 19 N.Y.3d 937 (2012); *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005) ("It is an obligation the law creates in the absence of any agreement." (citation omitted)); *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 388 (1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." (citation omitted)).

Plaintiff argues that the dispute concerning whether the Lease and Guaranty terminated under the Stipulation prevents dismissal of Plaintiff's unjust enrichment claim as there is a dispute concerning the existence and continued effect of a contract. (Pl. Opp'n Mem. 14–15.) However, Defendants do not argue against the *validity* of the Lease, Guaranty or Stipulation. *Cf. Ahlers v. Ecovation, Inc.*, 905 N.Y.S.2d 398, 399–400 (App. Div. 2010) (allowing an unjust

enrichment claim to proceed where the plaintiffs alleged that the merger agreement at issue was invalid). Instead, Defendants argue that *because* the Lease, Guaranty and Stipulation exist and govern the rights between the parties, Plaintiff's action in unjust enrichment must be dismissed. (Defs. Mem. 13.)

Plaintiff responds that because Defendants argue that the Stipulation terminated the Lease and Guaranty, "there is a dispute as to whether these contracts continue to exist and continue in effect." (Pl. Opp'n Mem. 14.) Plaintiff's argument is off the mark. An unjust enrichment claim cannot remedy the defects, if any, in Plaintiff's claims under the Lease, Guaranty or Stipulation and to the extent that Plaintiff's claims under those documents can succeed, the unjust enrichment claim is duplicative. *See Corsello*, 18 N.Y.3d at 790.

Plaintiff's unjust enrichment claim is based on Defendants' allegedly benefiting from the tenant "Beaaro's failure to pay its obligations under the [L]ease" and Defendants' executing the Guaranty in order to induce Plaintiff to sign the Lease with Beaaro. (Am. Compl. ¶¶ 34–35.) Because Defendants signed a Guaranty concerning the Lease and later signed a Stipulation attempting to resolve all claims under the Lease and Guaranty, Plaintiff cannot maintain an unjust enrichment claim based on the tenant's failure to pay its obligations under the Lease, as any such disagreements are covered by the terms of the Stipulation. *Compare Town of Wallkill v. Rosenstein*, 837 N.Y.S.2d 212, 215 (App. Div. 2007) (affirming the dismissal of an unjust enrichment claim because it was "merely duplicative of the legal malpractice cause of action, as [it] arose from the same facts and did not allege distinct and different damages"), *and Kavner v. Geller*, 854 N.Y.S.2d 343, 344 (App. Div. 2008) ("The unjust enrichment cause of action was properly dismissed inasmuch as the settlement between [defendant] and plaintiff is a valid and enforceable contract which controls the rights of the parties as they relate to the instant dispute."

(citation omitted)), *with Sebastian Holdings, Inc. v. Deutsche Bank AG*, 912 N.Y.S.2d 13, 15

(App. Div. 2010) (allowing a claim for unjust enrichment to proceed because it did "not depend

on the existence of valid and enforceable written contracts between the parties, but rather arises

from facts wholly independent of any contract upon which plaintiff sues").  Plaintiff's unjust

enrichment claim is dismissed.[7]

### f.   Claim for legal fees

Plaintiff argues that, pursuant to the Guaranty, Defendants are obligated to reimburse

Plaintiff for the costs of enforcing the Guaranty.  (Am. Compl. ¶ 45.)  Defendants argue that

legal fees under the Guaranty are only owed to Plaintiff in the event that the "landlord [Plaintiff]

prevails in . . . litigation."  (Def. Mem. 15.)  Because the Court finds that the Guaranty has

terminated, Plaintiff is not entitled to legal fees under the Guaranty and Plaintiff's claim for legal

fees is therefore dismissed.

### g.   Leave to amend

Plaintiff requests leave to amend her Complaint in order to (1) reference certain

provisions of the Lease in new paragraphs, (2) add a cause of action based on breach of the

Stipulation and (3) make "very minor revisions to the language of the [A]mended [C]omplaint."

---

[7]  Defendants' reply memorandum makes an additional argument with respect to dismissing Plaintiff's unjust enrichment claim.  Plaintiff's Amended Complaint only states that Defendants benefit from the Beaaro's failure to pay its obligations under the Lease.  (Am. Compl. ¶ 34.)  Defendants presume that this "benefit" refers to Beaaro's use of the Property without paying rent.  (Def. Reply. Mem. 15.)  Defendants argue that all rent prior to August 2007 was satisfied by payment of the $250,000, and, because Beaaro vacated the premises in August 2007, no more rent could possibly be owed.  (*Id.*)  Defendants argue that as a result, there is no period of time during which Beaaro occupied the Property without compensating Plaintiff, and thus, there has been no unjust enrichment.  (*Id.*)  The Court notes that Defendants made this argument for the first time in their reply brief and Plaintiff did not have an opportunity to respond.  However, in view of the Court's ruling, the Court declines to consider this argument.

(Pl. Opp'n Mem. 15.)  Defendants argue against such leave on the basis of prejudice and undue delay.  (Def. Reply Mem. 12–14.)

The Federal Rules of Civil Procedure provide that courts "should freely give leave" to amend a complaint "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits."  *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (citation omitted).  "Mere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for [a] district court to deny the right to amend."  *Azkour v. Haouzi*, No. 11-CV-5780, 2012 WL 3667439, at *2 (S.D.N.Y. Aug. 27, 2012) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (citation and internal quotation marks omitted)).  However, motions to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008); *see also Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000) (same).

In evaluating prejudice, courts "generally consider whether the assertion of the new claim or defense would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'"  *Monahan*, 214 F.3d at 284 (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).  Courts should be "hesitant to allow amendment where doing so unfairly surprises the non-movant and impedes the fair prosecution of the claim."  *Monahan*, 214 F.3d at 284.  The Second Circuit has identified prejudice to the opposing party resulting from a proposed amendment as among the

"most important" reason to deny leave to amend. *AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A.*, 626 F.3d 699, 725 (2d Cir. 2010).

Defendants' primary argument in support of their claim that allowing Plaintiff to amend to add a breach of contract claim would be prejudicial is that discovery in the instant action has long been closed and if Plaintiff's motion were to be granted, Defendants would have to file a new answer, engage in "completely new discovery" and rewrite and resubmit a new summary judgment motion. (Def. Reply Mem. 13.) Of these arguments only Defendants' claim of having to engage in new discovery gives the Court pause. *See Laurent v. PricewaterhouseCoopers LLP*, No. 06-CV-2280, 2012 WL 3614043, at *5 (S.D.N.Y. Aug. 15, 2012) ("[T]he defendants' concern that they will have to file a new answer is neither prejudicial, nor a reason to deny a motion to amend.").

Defendants cite to *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442 (2d Cir. 1985), for the proposition that a proposed amendment is "especially prejudicial" when a party has already moved for summary judgment and discovery has been completed. *Id.* at 446. However, *Ansam* is distinguishable. *Ansam* involved a proposed amendment to a complaint concerning new operative facts, different dates and a different statute. *See Hanlin v. Mitchelson*, 794 F.2d 834, 841 (2d Cir. 1986) (reversing a district court's denial of leave to amend and distinguishing *Ansam*). Defendants also argue that even if extensive new discovery is not required, the close of discovery and the filing of a motion for summary judgment is sufficient reason to deny Plaintiff's motion to amend. (Def. Reply Mem. 13.) The case relied on by Defendants, *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71 (2d Cir. 1998), is distinguishable in that the lower court found that the amendments would require a new wave of discovery and result in substantial delay. *Id.* at 88. Here, there is no such concern. *See Hanlin*, 794 F.2d at

841 (recognizing that the completion of discovery and filing of a summary judgment motion need not preclude a court from granting leave to amend the complaint where the new claim arises "from the same set of operative facts as the original complaint").

Allowing Plaintiff to add a breach of contract claim based on the Stipulation will require no new discovery as it concerns the same operative dates and facts. (*See* Pl. Reply Mem. 4–5 ("Here the proposed second amended complaint does not allege any new facts but is based *verbatim* on the very same facts in the amended complaint that was filed several years ago.")). Furthermore, Defendants' arguments in support of its motion to dismiss Plaintiff's fraud and unjust enrichment claims assumed the existence of a breach of contract claim. (*See* Def. Mem. 9 ("Plaintiff s first case of action for damages for fraud does not lie because the only fraud claim relates to an alleged breach of contract."); *id.* at 13 ("Clearly, because a contract (the Lease, the Guaranty and the Stipulation) between the parties exists, Plaintiff's second cause of action for unjust enrichment, cannot be maintained and must be dismissed.").) It would be unjust for this Court to dismiss Plaintiff's fraud and unjust enrichment claims as duplicative of a breach of contract claim and, in a judicial sleight of hand, deny Plaintiff the ability to amend her Complaint to assert a breach of contract claim. Moreover, in the other action before this Court, Tobin II, which involves the same parties, but with Defendants as the plaintiffs, Defendants ask the Court to make a finding that Defendants complied with the Stipulation, and the parties have agreed that discovery in this action, Tobin I, may be used to resolve the issues in Tobin II. (*See* Tobin II Minute Entry dated July 19, 2012.) Under these circumstances, the Court finds that granting Plaintiff leave to amend the Complaint will not result in undue prejudice.

Defendants also urge the Court to deny Plaintiff's motion based on undue delay. Although Plaintiff fails to explain her tardiness, the Court does not find, as Defendants argue,

that Defendants never anticipated such a claim. (Def. Reply Mem. 14.) For example, during the deposition of Plaintiff, counsel for Defendants questioned Plaintiff about Beaaro's, and thus Defendants', compliance with its obligations under paragraphs 3, 5 and 6 of the Stipulation. (Transcript of Deposition of Helene K. Tobin, dated July 7, 2011, at 37:16–21, 38:21–25, 39:24–25, annexed to the Harris Reply Decl. as Ex. J.) Defendants respond that "[a]ny deposition questions relating to breach [of the Stipulation] were [only] to determine if the [L]ease and Guaranty had been terminated." (Def. Reply Mem. 14.) Regardless of the purpose of defense counsel's questioning, the substance evinces Defendants' anticipation of Plaintiff's breach of the Stipulation claim, or at least a familiarity with the underlying subject matter of such a claim. Furthermore, in a letter to the Court dated September 16, 2011, counsel for Defendants wrote that "[w]e are simply respectfully requesting that this Court decide whether or not the terms of the Stipulation were performed by the tenant and the defendants herein." (Docket Entry No. 65.) It appears that Defendants not only anticipated a breach of contract claim but that they affirmatively wanted the Court to address such a claim. The Court, in its discretion and in the interest of justice, grants Plaintiff's cross-motion to amend the complaint.

## IV. Tobin II

Plaintiff moves to dismiss Defendants' related action before this court, Tobin II, on the basis of issue and claim preclusion, improper service and standing.[8]

---

[8]    Plaintiff notes that Defendants' counsel told the Court at the January 31, 2013 pre-motion conference that it would discontinue the action filed under docket number 11-CV-3985, Tobin II. (Pl. Opp'n Mem. 17.) Defendants deny that their attorney made this representation to the Court. (Def. Reply Mem. 12.) At the pre-motion conference counsel for Defendant did inform the Court that he would discontinue the action but then qualified his statement to state that he would "probably" discontinue after speaking with his clients. (Pre-Motion Conference Transcript, annexed to Harris Decl. as Ex. E.) Defendants now state that they "consent to a discontinuance of . . . [Tobin II] if the instant action is dismissed, or alternatively, if Plaintiff agrees that, in the event this Court finds for Plaintiff in this action, Defendants receive a credit

### a. Standard of Review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court "must take all of the factual allegations in the complaint as true." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)); *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Iqbal*, 556 U.S. at 678); *see also Pension Ben. Guar. Corp.*, 712 F.3d at 717–18. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Pension Ben. Guar. Corp.*, 712 F.3d at 718 (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). Although all allegations contained in the complaint are assumed to be true, this principle is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

### b. Preclusion

"The federal courts generally have . . . consistently accorded preclusive effect to issues decided by state courts." *Allen v. McCurry*, 449 U.S. 90, 95 (1980). "The preclusive effect of a

---

for the security deposit." (Def. Reply Mem. 12.)

judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Burberry Ltd. v. Horowitz*, 534 F. App'x 41, 43 (2d Cir. 2013) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). A Court can take judicial notice of state court decisions and dismiss a federal action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure based on res judicata. *See, e.g.*, *Rates Tech. Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 167 (2d Cir. 2012) ("We may 'take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings.'" (alteration in original) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)); *Sheffield v. Sheriff of Rockland Cnty. Sheriff Dep't*, 393 F. App'x 808, 814 (2d Cir. 2010) (affirming district court dismissal of the complaint based on res judicata based on a state court action); *Giragosian v. Ryan*, 547 F.3d 59, 66 (1st Cir. 2008) ("A court may consider matters of public record in resolving a Rule 12(b)(6) motion to dismiss. Matters of public record ordinarily include 'documents from prior state court adjudications.'" (citations omitted)); *Gianatasio v. D'Agostino*, 862 F. Supp. 2d 343, 348 (S.D.N.Y. 2012) (dismissing federal complaint on a motion to dismiss where preclusion was found based on state judgment); *Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 796 F. Supp. 2d 458, 468 (S.D.N.Y. 2011) (taking judicial notice of the state court action and dismissing the complaint); *Liao v. Holder*, 691 F. Supp. 2d 344, 355 (E.D.N.Y. 2010) (same); *Cowan v. Ernest Codelia, P.C.*, 149 F. Supp. 2d 67, 73 (S.D.N.Y. 2001) (same); *see also In re Sonus Networks, Inc, S'holder Derivative Litig.*, 499 F.3d 47, 56 (1st Cir. 2007) (finding that preclusion "is an affirmative defense" that "may be resolved on" a motion to dismiss).

"Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do

so. . . ." *Allen*, 449 U.S. at 96; *see also* 28 U.S.C. § 1738; *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 191 (2d Cir. 2012) ("[I]n order to determine the preclusive effect of a state-court decision, a federal court must look to the law of that state and should not give the state-court decision any greater preclusive effect than the courts of that state would give it . . . ."), *cert. denied*, 567 U.S. ---, 133 S. Ct. 846 (2013); *Brooks v. Giuliani,* 84 F.3d 1454, 1463 (2d Cir. 1996) (finding that state court decisions must be accorded the preclusive effect that would be given it in the state court); *RI, Inc. v. Gardner*, No. 10-CV-1795, 2012 WL 3683447, at *4 (E.D.N.Y. Aug. 23, 2012); *Gianatasio*, 862 F. Supp. 2d at 348 (same); *Alzheimer's Found.*, 796 F. Supp. 2d at 468 (S.D.N.Y. 2011) (same). Thus, this Court must apply New York law to determine whether the claims brought by Defendants against Plaintiff in Tobin II are barred by res judicata.

### i. Claim preclusion

"Under both New York law and federal law, the doctrine of res judicata, or claim preclusion, provides that '[a] final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action.'" *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010) (alterations in original) (quoting *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997)); *see also Bank of N.Y. v. First Millenium, Inc.*, 607 F.3d 905, 919 (2d Cir. 2010) ("Claim preclusion bars the relitigation . . . of claims that were, *or could have been*, brought in an earlier litigation between the same parties or their privies."). "If a valid and final judgment has been entered on the merits of a case, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions,

out of which the action arose." *Duane Reade*, at 196 (citation and internal quotation marks omitted).

Plaintiff argues that the claims brought by Defendants in Tobin II were previously litigated in the L&T Action. In Tobin II, Defendants are suing Plaintiff for specific performance of the Stipulation, attorneys' fees relating to the enforcement of the Stipulation and defense of the instant action before this Court, and return of the their deposit in the sum of $17,421.02 plus interest. While it is true that Defendants sought the same relief in the L&T Action — Defendants moved in the L&T Action for a return of the security deposit, discontinuance of three pending litigations including Tobin II, and general releases — the Appellate Term reversed the L&T Decision for lack of jurisdiction. (Def. 56.1 ¶ 18; Pl. 56.1 ¶ 18.) Therefore, there is no "final judgment." *See N.Y.C. Prop. Mgmt., LLC v. Santos*, 934 N.Y.S.2d 35 (Civ. Ct. 2011) ("Res judicata requires that 'when a matter in controversy between parties has been submitted to a competent judicial tribunal, its decision thereon is final between the parties until it has been reversed, set aside or vacated . . . .'" (quoting *Brown v. City of New York*, 66 N.Y. 385, 390 (1876))); *see also In re XO Commc'ns, Inc.*, 330 B.R. 394, 447 (Bankr. S.D.N.Y. 2005) ("[U]nder New York law, 'claim preclusion does not apply where the party against whom preclusion is asserted was unable in the first action to obtain complete relief because of limitations on the subject matter jurisdiction of or other obstacles in the initial forum.'" (quoting *Rosen v. Paul, Hastings, Janofsky & Walker LLP*, No. 05-CV-4211, 2005 WL 1774126, at *2 (S.D.N.Y. July 28, 2005))).

Plaintiff argues that the Appellate Term not only reversed the L&T Decision for lack of jurisdiction, but also denied Defendants' motion on the merits. The Appellate Term's four-page decision only addressed the relief then requested by Defendants and the civil court's inability to

grant that relief because of the civil court's limited jurisdiction. The holding concisely states that "the order dated January 23, 2009 is reversed and the motion by tenant is denied." (App. Term Decision at 4.) From this terse sentence Plaintiff argues that the Appellate Term decided Defendants' motion on the merits.[9] The Appellate Term did not state that either party complied with the Stipulation, opine on the validity of the Stipulation or discuss the ability of the Appellate Term to enforce the Stipulation. Absent any language suggesting that the court addressed the merits of Defendants' motion, this Court cannot conclude that Defendants' action is barred by claim preclusion. Plaintiff's motion to dismiss based on claim preclusion is denied.

ii.    Issue preclusion

"The 'fundamental notion' of the doctrine of collateral estoppel, or issue preclusion 'is

---

[9] Plaintiff argues that the Appellate Term's jurisdiction is "general, unlimited and unqualified." (Pl. Opp'n Mem. 12); *see also J.H. Taylor Const. Corp. v. Liguori*, 5 Misc. 3d 74, 75, 787 N.Y.S.2d 598 (App. Term 2004) ("The authority of an intermediate appellate court to review a record is as broad as that of the trial court." (citation omitted)). Defendant contends that it is well-settled that "an appellate court cannot grant affirmative relief to a nonappealing party unless it is necessary to do so in order to accord full relief to a party who has appealed." *Hecht v. City of New York*, 60 N.Y.2d 57, 60 (1983). *Hecht*, is easily distinguished as it involved *multiple* parties. *Id.* The "nonappealing party" referenced in *Hehct* was a nonappealing co-defendant. *See id.* at 60–61 ("After a jury trial, both defendants were found to be equally liable. Only [one defendant] appealed the judgment."). The "well settled" principal cited by Defendants is inapposite. The Court notes that the *Hecht* court also stated that it is "axiomatic that, once an appeal is properly before it, a court may fashion complete relief to the appealing party." *Id.* at 62. However, in this instance, it is unclear that the appeal was "properly before" the Appellate Term. *See BLF Realty Holding Corp. v. Kasher*, 183 Misc. 2d 953, 954–55 (App. Term 2000) ("Since Civil Court lacked jurisdiction to adjudicate plaintiff's claims on a complaint for declaratory judgment, we are *constrained* to vacate the merits determination. Our disposition is without prejudice . . . ."); *see also Waxman v. Patabbe, Inc.*, No. 2012-115642, slip op. at 2 (App. Term. Feb. 7, 2014) ("Since the Civil Court lacked jurisdiction to grant the requested injunction, the order, insofar as appealed from, is reversed . . . ."); *A.B. Med. Servs., PLLC v. Motor Vehicle Acc. Indemnification Corp.*, 973 N.Y.S.2d 905, 908 (App. Term 2013) (stating that the civil court lacked the jurisdiction and not addressing the merits). Rather than render an advisory opinion, the Court only holds that, whether or not the Appellate Term could have granted either party relief on the merits, it is clear from its decision that the merits were not reached.

that an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the parties or their privies.'" *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008) (quoting *United States v. Alcan Aluminum Com.*, 990 F.3d 711, 718–19 (2d Cir. 1993)); *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979) ("Under the doctrine of collateral estoppel . . . the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action."). Collateral estoppel bars relitigation of an issue "when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Denton v. Hyman*, 502 F.3d 61, 65 (2d Cir. 2007) (citing *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455 (1985)); *accord Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003). "The 'identical issue necessarily decided' requirement under New York law comprises two parts: (1) the issues of both proceedings must be identical, and (2) the issue must have been raised, necessarily decided, and material to the first action." *Matusick v. Erie Cnty. Water Auth.*, --- F.3d ---, ---, 2014 WL 700718, at *9 n.9 (2d Cir. 2014) (citation omitted). Under New York law, "[t]he party seeking to invoke the doctrine bears the burden of establishing its applicability." *Tracy v. Freshwater*, 623 F.3d 90, 99 (2d Cir. 2010) (citing *Evans v. Ottimo*, 469 F.3d 278,281 (2d Cir. 2006)).

As with Plaintiff's claim preclusion argument, Plaintiff fails to prove that the issue — compliance with the Stipulation — was decided by the Appellate Term. This Court understands the Appellate Term's decision as simply reversing the L&T decision and denying Defendants' motion for lack of subject matter jurisdiction in the civil court. Therefore, the issue, although identical, has not been necessarily decided as required by New York Law for collateral estoppel

to apply.  Plaintiff's motion to dismiss based on issue preclusion is denied.

### iii.    Prior outstanding judgment

By supplemental declaration, (Supplemental Declaration of John Harris ("Harris Supp. Decl."), dated Nov. 19, 2013, Docket Entry No. 112), Plaintiff notified the Court that, pursuant to the now-reversed L&T Decision, a judgment was entered on April 9, 2010, and is still on record in favor of Beaaro, Inc., and against Plaintiff for the sum of $23,340.62.[10]  (Transcript of Judgment (the "L&T Judgment"), dated April 9, 2010, annexed to Harris Supp. Decl. as Ex. P.) Based on the existence of the L&T Judgment, Plaintiff asserts that Defendants' related action is barred by claim preclusion.  (Harris Supp. Decl. ¶ 8.)

The parties then engaged in a rapid exchange of correspondence.  By letter dated November 21, 2013, Defendants noted that the judgment is unenforceable as the L&T Decision was reversed by the Appellate Term.  (Defendants' letter dated Nov. 21, 2013 ("Def. Ltr."), Docket Entry No. 113.)  Plaintiff then submitted a second supplemental declaration stating that Defendants lack any basis for claiming that the judgment is "unenforceable."  (Second Supplemental Declaration of John Harris ("Harris Second Supp. Decl."), dated Nov. 22, 2013, Docket Entry No. 114.).  Plaintiff hypothesizes that if the L&T Judgment were turned over to a marshal, "there is no reason why the marshal would hesitate to enforce it."  (Harris Second Supp. Decl. ¶ 7.)  Irrespective of the enforceability of the L&T Judgments, Plaintiff argues that it is still a lien on the Property.  (*Id.* ¶ 8.)  The existence of the L&T Judgment does not change the Court's analysis with respect to claim preclusion since there is no final judgment on the merits with respect to Defendants' claim.  Plaintiff argues that Defendants' failure to vacate that

---

[10]    This sum includes the security deposit of $17,421.02, interest of $5,879.00 and $40.00 in "prospective fees."  (*See* Transcript of Judgment, dated April 9, 2010, annexed to Harris Supp. Decl. as Ex. P.)

judgment after repeated requests from Plaintiff's counsel betrays bad faith. (*See* Harris Second Supp. Decl. ¶ 8.) However, Plaintiff did not represent that she has moved to vacate the judgment based on the Appellate Term Decision. Regardless of Defendants' inaction, inexplicable as it may be, the onus is on Plaintiff not Defendants, and, in any event, vacatur of the judgment is not before this Court.

### c. Improper service

Plaintiff also asserts that she was never properly served with the complaint in Tobin II and, therefore, this Court lacks personal jurisdiction over her. Defendants did not address this argument in their papers. "Although no specific time limit is specified for raising a defense of improper service of process, such a motion must be raised in a 'reasonably timely fashion.'" *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 659 (S.D.N.Y. 1997) (quoting *Federal Home Loan Mortgage Corp. v. Dutch Lane Assocs.*, 775 F. Supp. 2d 133, 136 (S.D.N.Y. 1991)), *aff'd*, 173 F.3d 844 (2d Cir. 1999); *see also Moss v. Wyeth, Inc.*, 872 F. Supp. 2d 154, 160 (D. Conn. 2012) ("However, it is well settled that an objection to defective service, like any personal jurisdiction defense, is a privileged defense that can be waived by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct." (citation and internal quotation marks omitted)); *United States v. Brow*, No. 01-CV-4797, 2011 WL 7562706, at *5 (E.D.N.Y. Dec. 28, 2011) ("When a defendant participates in the litigation, delays in making an objection to personal jurisdiction, and then makes an objection that could have been easily cured through amending service or proof of service in the first place, the defendant has waived the personal jurisdiction objection."), *report and recommendation adopted*, No. 01-CV-4797, 2012 WL 947589 (E.D.N.Y. Mar. 20, 2012); *Subway Int'l B.V. v. Cere*, No. 10-CV-01713, 2011 WL 3511462, at *3 (D. Conn. Aug. 11, 2011) ("The Second Circuit has advised that a

defendant can forfeit the personal jurisdiction defense arising from improper service of process even when formally raised in an answer or motion to dismiss.").

Here, Plaintiff does not contend that the court lacks personal jurisdiction over her pursuant to various New York long arm provisions, only that she was not served pursuant to the proper section of the CPLR. (*See* Affidavit of John Harris ("Harris Aff."), dated July 11, 2011, ¶¶ 6–9, annexed to Harris Decl. as Ex. F.) Since removal, the parties met with the Honorable Kiyo Matsumoto on September 21, 2011 and agreed to meet with Magistrate Judge Ramon Reyes, Jr. to discuss settlement.[11] (Minute Entry dated Sept. 21, 2011.) On November 1, 2011, the parties met with Judge Reyes and determined that settlement was not possible. (Minute Entry dated Nov. 1, 2011.) On June 7, 2012, Judge Reyes held a status conference with the parties. (Minute Entry dated June 8, 2012.) Judge Reyes extended discovery deadlines by sixty days and determined that no further extensions would be granted for any reason. (Minute Entry dated June 8, 2012.) On July 19, 2012, the parties again met with Judge Reyes and represented that depositions were ongoing but that the parties expected to comply with the established discovery deadline. (Minute Entry dated July 19, 2012.) On July 27, 2012, almost 10 months after the first meeting with Judge Matsumoto, Plaintiff answered the Complaint, asserting improper service. (Answer ¶¶ 39–41, Docket Entry No. 2.) Based on the foregoing, the Court finds that, under all the circumstances, Plaintiff's conduct bars her from complaining of defective service. *See, e.g.*, *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999) (finding forfeiture of a personal jurisdiction defense after four years and substantial pretrial activity despite asserting the defense in a timely answer); *Datskow v. Teledyne, Inc., Cont'l Products Div.*, 899 F.2d 1298, 1303 (2d Cir. 1990) (finding, "under all the circumstances," forfeiture

---

[11]   Tobin II was transferred to this Court from Judge Matsumoto on March 30, 2012.

through conduct and noting that the court "would be slower to find waiver by a defendant wishing to contest whether it was obliged to defend in a distant court").

### d. Standing to sue

Plaintiff also argues for the first time in the Harris Supplemental Declaration, that because the L&T Judgment reflects the corporate entity Beaaro, Inc., rather than Defendants' personally named, Defendants implicitly concede that they lack standing to pursue the recovery of the $17,421.02 security deposit. This argument has the curious effect of pitting Plaintiff against herself. In Tobin I, Plaintiff argues that Defendants are principals under the Stipulation and therefore liable for breach of the Stipulation, and, at the same time, Plaintiff argues that Defendants lack standing to pursue recovery of the $17,421.02 deposit pursuant to paragraph 5 of the Stipulation.

Ignoring the inconsistencies within Plaintiff's legal arguments, Defendants, as signatories to the Stipulation, have standing to sue under the Stipulation. *Cf. Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) ("A non-party to a contract governed by New York law lacks standing to enforce the agreement . . . ." (alteration and internal quotation marks omitted)); *Nature's Plus Nordic A/S v. Natural Organics, Inc.*, No. 09-CV-04256, 2013 WL 5942257, at *6 (E.D.N.Y. Nov. 6, 2013) ("Under New York law, which the parties agree governs the Plaintiffs' claim for breach of contract, the elements of the claim are a 'contract, the plaintiff's performance under the contract, the defendant's breach, and damages resulting from the breach.'" (quoting *TNT USA Inc. v. DHL Exp. (USA), Inc.*, No. 09-CV-0481, 2012 WL 601452, at *5 (E.D.N.Y. Feb. 23, 2012))); *Tamir v. Bank of New York Mellon*, No. 12-CV-4780, 2013 WL 4522926, at *3 (E.D.N.Y. Aug. 27, 2013) ("Generally speaking, a non-party to a contract lacks standing to challenge an agreement in the absence of terms demonstrating that it is

a third-party beneficiary.").

**V.  Conclusion**

The Court grants Defendants' summary judgment motion and dismisses the claims in Tobin I but grants Plaintiff leave to amend the complaint in Tobin I to add a claim for breach of contract.  The Court denies Plaintiff's motion to dismiss Tobin II.  Because both actions are based on the Stipulation, the Court consolidates the actions for all further proceedings, *sua sponte*, pursuant to Rule 42 of the Federal Rules of Civil Procedure.[12]

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: March 28, 2014
        Brooklyn, New York

---

[12] *See* Fed. R. Civ. Pro. 42(a)(2); *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) ("A district court can consolidate related cases under Federal Rule of Civil Procedure 42(a) *sua sponte*."); *Innovation Ventures v. Ultimate One Distrib. Corp.*, No. 12-CV-5354, 2014 WL 824304, at *2 (E.D.N.Y. Mar. 3, 2014) ("A court may consolidate related cases *sua sponte* under Rule 42(a)").